**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 1:14-cv-20880-UU
Judge: Hon. Ursula Ungaro

|  |
| --- |
| RICHARD THORPE and DARREL WEISHEIT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> WALTER INVESTMENT MANAGEMENT, CORP., KEITH A. ANDERSON, BRIAN COREY, MARK J. O'BRIEN, DENMAR DIXON, CHARLES E. CAUTHEN and C. MARC HELM, <br><br> Defendants. |

**<u>MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

{00213882;10 }

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ii

I.     PRELIMINARY STATEMENT ...........................................................................................1

II.    FACTS ................................................................................................................................2

    A.    Liability ...................................................................................................................2

    B.    Procedural History ................................................................................................4

        1.    Pleadings and Motions to Dismiss ...........................................................4

        2.    Class Certification ....................................................................................5

        3.    Discovery ..................................................................................................5

III.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS .................6

IV.    THE SETTLEMENT SHOULD BE FINALLY APPROVED ...........................................6

    A.    Standards ................................................................................................................6

    B.    The Settlement is Fair, Adequate, and Reasonable under *Bennett* ...........................7

        1.    Likelihood of Success at Trial ..................................................................7

        2.    Considering the Range of Possible Recovery, the Settlement Is Clearly Within the Range of Reasonableness ......................................................10

        3.    The Complexity, Expense, and Likely Duration of Continued Litigation .12

        4.    The Reaction of the Class ........................................................................13

        5.    The Stage of Proceedings ........................................................................14

    C.    Settlement Negotiations Were at Arm's Length ..................................................15

    D.    The Recommendation of Experienced Counsel Supports Approval of the Settlement ............................................................................................................15

V.    THE PLAN OF ALLOCATION SHOULD BE APPROVED ........................................16

VI.    CONCLUSION ................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*,
    No. 00-14017-CIV, 2002 WL 1162422 (S.D. Fla. May 7, 2002) ........................................... 15

*Beavers v. Am. Cast Iron Pipe Co.*,
    164 F. Supp. 2d 1290 (N.D. Ala. 2001)................................................................................. 8

*Behrens v. Wometco Enterprises, Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988).................................................................................*passim*

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) .......................................................................................... 7, 8

*Bennett v. Behring Corp.*,
    96 F.R.D. 343 (S.D. Fla. 1982)............................................................................................ 7

*Canupp v. Sheldon*,
    No. 2:04-CV-260-FTM-99DNF, 2009 WL 4042928 (M.D. Fla. Nov. 23, 2009)..................... 7

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ............................................................................................ 8

*Figueroa v. Sharper Image Corp.*,
    517 F. Supp. 2d 1292 (S.D. Fla. 2007)................................................................................. 8

*In re "Agent Orange" Prod. Liab. Litig.*,
    611 F. Supp. 1396 (E.D.N.Y. 1985) .................................................................................. 13

*In re Charter Commc'ns, Inc. Sec. Litig.*,
    No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ................................ 13

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011)..................................................................... 11, 15, 17

*In re Chicken Antitrust Litig. Am. Poultry*,
    669 F.2d 228 (5th Cir. 1982) ............................................................................................ 17

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011)....................................................................................... 14

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................................... 14

*In re Oracle Sec. Litig.*,
    No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ...................................... 18

*In re Smith*,
    926 F.2d 1027 (11th Cir. 1991) ................................................................................... 8, 17

*In re Sunbeam Sec. Litig.*,
    176 F. Supp. 2d 1323 (S.D. Fla. 2001) ...................................................... 9, 13, 16

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) .............................................................................. 7

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) .................................................................. 11

*Ressler v. Jacobson*,
    822 F. Supp. 1551 (M.D. Fla. 1992) ................................................................ 14, 15

*Saccoccio v. JPMorgan Chase Bank, N.A.*,
    297 F.R.D. 683 (S.D. Fla. 2014) .......................................................................... 8

*Strube v. Am. Equity Inv. Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005) ......................................................................... 17

*Vinh Nguyen v. Radient Pharm. Corp.*,
    No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014)............................ 14

*Warren v. City of Tampa*,
    693 F. Supp. 1051 (M.D. Fla. 1988)................................................................... 7, 8

*Zuckerman v. Smart Choice Auto Group, Inc.*,
    No. 6:99-CV-237-ORL28KRS, 2001 WL 686879 (M.D. Fla. May 3, 2001) ........................ 10

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ 1, 6, 7, 16

**Other Authorities**

*Newberg on Class Actions* (4th ed. 1992) ................................................................... 16

Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action
    Litigation: 2015 Full-Year Review* (NERA Economic Consulting, 2015)................................ 2

## I.       PRELIMINARY STATEMENT

Plaintiffs and Class Representatives Richard Thorpe and Darrel Weisheit hereby move under Federal Rule of Civil Procedure 23(e) for final approval of the proposed Settlement of this action for $24,000,000 and the Plan of Allocation for the proceeds thereof. The Settlement is an excellent result for Class members in a case that presented novel and complex issues with respect to both merits and damages. The Settlement was reached only after Plaintiffs, among other things: (a) conducted an extensive investigation of the facts and law of claims against Defendants Walter Investment Management Corp. ("Walter Investment" or the "Company"), Mark J. O'Brien, Denmar Dixon, Keith A. Anderson, Brian Corey, Charles E. Cauthen, Robert Yeary, and H. Marc Helm; (b) drafted and filed the initial, Amended, Second Amended, and operative Third Amended Complaints; (c) defeated certain Defendants' motions to dismiss; (d) engaged in extensive document discovery and reviewed over 85,000 pages of documents; (e) took and/or defended four depositions, including depositions of the Class Representatives; (f) prepared for depositions of certain relevant parties; (g) obtained an order certifying a class; (h) prepared two mediation statements and participated in two all-day mediations with Hon. Layn Phillips and Michelle Yoshida in New York; and (i) negotiated the specific terms of the Settlement. *See* Rosen Decl. ¶¶ 1–10.

The Settlement represents 10% of the maximum damages recoverable based on the two disclosures the Court upheld in denying the motion to dismiss. Significantly, it also represents 5.5% of Plaintiffs' best-case scenario of damages, *i.e.*, assuming that Plaintiffs prevail on all claims at trial and appeals, and that the cumulative decline of Walter Investment's stock price following all of the corrective disclosures is attributed to Defendants' alleged fraud. *See* Rosen Decl. ¶¶ 13–14. This percentage of recovery is more than triple the median for similar securities

class-action settlements; in cases with estimated damages of between $400 to $599 million, the median settlement between 1996 and 2015 returned 1.8% of estimated damages. *See* Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review* 33 (NERA Economic Consulting, 2015), attached to the Rosen Decl. as Ex. 7.

Pursuant to the Court's Preliminary Approval Order, over 39,000 notice and claim packets were mailed to potential Settlement Class Members and nominees. *See* Declaration of Josephine Bravata Concerning the Mailing of The Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release Form ("Bravata Decl.") ¶¶ 5–7, attached to the Rosen Decl. as Ex. 1. To date, no class members have objected to the settlement, and only one class member has opted out. *Id*. ¶¶10–11. The deadline to seek exclusion was September 1, 2016 and to object is September 28, 2016. *Id*.

The Settlement results from arm's-length negotiations among the Settling Parties that began with an all-day mediation on October 27, 2015 with nationally recognized mediator Hon. Layn Phillips and continued with months of informal settlement negotiations. The negotiations culminated in the Settlement after further negotiations conducted with Hon. Layn Phillips' assistance and a second full day of mediation.

For these reasons and those set forth below, Plaintiffs respectfully submit that the Court should approve the Settlement because it is fair, reasonable and adequate.

## II.     FACTS

### A.     Liability

Walter Investment's business is focused primarily on the servicing and origination of residential loans, with an emphasis on sub-prime mortgages and other credit-challenged mortgage assets. The Company grew rapidly after the 2008 financial crisis by marketing itself as

a "high touch" specialty mortgage servicer, offering creditors a way to derive improved credit performance from non-performing loans amidst the avalanche of mortgage defaults that followed the collapse of the real estate market.

Plaintiffs allege that during the Class Period, Defendants falsely represented to investors that Walter Investment maintained strict internal controls and the highest level of oversight over its servicing protocols and procedures, as well as a high level of compliance with regulatory and legal requirements. In fact, however, its key subsidiary, Green Tree Servicing LLC ("Green Tree"), engaged in rampant violations of federal consumer financial laws. Green Tree's widespread misconduct unsurprisingly attracted the scrutiny of regulators, which began investigations into its abusive practices prior to the Class Period. Defendants maintain that they did not make any material misstatements because Green Tree designed and implemented robust compliance and training programs to promote adherence with applicable laws, and their statements concerning Walter Investments' financial results in the first and second quarter of 2012 and the first quarter of 2013 were not false when made.

The action alleges that Class members suffered significant damages when the truth was revealed to the market. Specifically, on March 18, 2013, the Company disclosed a material weakness in internal controls over financial reporting. On this news, shares of the Company fell $8.61 per share or over 20% to close at $32.98 per share on March 19, 2013. On November 6, 2013, the Company disclosed that it had been notified by the CFPB that the agency was considering taking action against Green Tree for violating various federal consumer financial laws. On this news, shares of the Company fell $2.51 per share or approximately 7% to close at $33.41 per share on November 7, 2013. On February 27, 2014, the Company revealed that the FTC and CFPB were seeking authority to bring an enforcement action against Green Tree. On

this news, shares of the Company fell $2.38 per share or approximately 8% to close at $25.90 per share on February 27, 2014. On August 11, 2014, the Company disclosed that it was pursuing settlement negotiations with the government and that the FTC and CFPB were demanding monetary penalties and injunctive relief in relation to Green Tree's business practices. On this news, shares of the Company fell $3.52 per share or over 12% to close at $24.75 per share.

Notably, although the action alleges several corrective disclosures, the Court only upheld two of these disclosures for loss causation purposes: March 18, 2013 and August 11, 2014. D.E. 102 at 63-66. Defendants, however, argued that the March 18th disclosure was not corrective of earlier misstatements concerning the Defendant's legal compliance and business practices because the disclosure related to a lack of internal controls over financial reporting, not compliance. Accordingly, Defendants contended that the stock price decline following the March 18th disclosure was entirely attributable to confounding factors unrelated to the alleged fraud. While Plaintiffs would have attempted to recover damages based on all of the alleged corrective disclosures at trial, Plaintiffs would have considerable risk in establishing loss causation and damages based on these disclosures in light of the Court's previous rulings.

**B.    Procedural History**

**1.    Pleadings and Motions to Dismiss**

This action was filed in March 2014. On May 8, 2014, the Court appointed Steven Beck and Thorpe as lead plaintiffs.[1] Plaintiffs filed the First Amended Class Action Complaint on July

---

[1] Mr. Beck voluntarily dismissed his claim before the First Amended Complaint was filed, and Mr. Weisheit joined the Action as a proposed Class Representative in the First Amended Complaint.

7, 2014, and Defendants moved to dismiss. On December 23, 2014, the Court granted

Defendants' motions to dismiss, granting leave to replead. D.E. 71.

Lead Plaintiffs filed the Second Amended Class Action Complaint on January 6, 2015

(D.E. 73), which Defendants moved to dismiss (D.E. 76-77). The Court upheld Plaintiffs' claims

against the Company and Defendants Brian Corey and Keith Anderson, but dismissed

Defendants Mark J. O'Brien, Denmar Dixon, Charles E. Cauthen and H. Marc Helm from the

action. D.E. 102.

On July 10, 2015, Plaintiffs filed the operative Third Amended Class Action Complaint

(the "Complaint") against Defendants Walter Management, Keith A. Anderson and Brian Corey.

D.E. 104.

### 2.   Class Certification

On March 16, 2016, the Court granted Plaintiffs' motion for class certification and

certified the following class:

> All persons or entities that purchased Walter Investment Management Corp.,
> common stock during the period from May 9, 2012 through August 11, 2014,
> inclusive, and excluding Defendants, the present and former officers and directors
> of Walter Investment and any subsidiary thereof, members of such excluded
> persons immediate families and their legal representatives, heirs, successors or
> assigns and any entity in which any excluded person has or had a controlling
> interest.

*Id.*[2]

### 3.   Discovery

Discovery began shortly after Plaintiffs filed the operative Complaint in July 2015. By

the time of the mediation, Plaintiffs had reviewed 85,000 pages of documents, taken and/or

---

[2] Defendants subsequently sought interlocutory appellate review under Federal Rule of Civil
Procedure 23(f). The parties later began settlement talks, and the Eleventh Circuit issued an order
on May 27, 2016 granting the parties' request to stay the proceedings pending settlement talks.

defended four depositions, and responded to Defendants' discovery requests. Rosen Decl. ¶¶ 6–10. Plaintiffs had also noticed and prepared for depositions of Green Tree's Executive Vice President of Operations Randy Shannon and Green Tree's Senior Vice President of Default Services Dominic Baglio. The mediation focused on very specific facts, individual documents, and testimony obtained in discovery. Plaintiffs thus had a sufficient understanding of the case to negotiate a very favorable settlement.

## III.   THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

As noted above, the Court previously certified a Class in this action on behalf of investors who purchased Walter Investment common stock between May 9, 2012 and August 11, 2014. On June 13, 2016, the Court preliminarily approved a Settlement Class of investors who purchased Walter securities during the Settlement Class Period of May 9, 2012 through February 26, 2015. Because nothing has occurred since then to cast doubt on whether the elements of Rule 23 are met, the Court should now finally certify the Settlement Class.

## IV.   THE SETTLEMENT SHOULD BE FINALLY APPROVED

### A.   Standards

There is a "strong judicial policy favoring settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "[Settlements [of class actions] are 'highly favored in the law and will be upheld whenever possible.'" *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984). The Eleventh Circuit has noted:

> Complex litigation—like the instant [class action] case—can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements . . . .

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).

To approve a settlement under Federal Rule of Civil Procedure 23(e), a district court must "make a two part determination that: 1) there is no fraud or collusion in reaching the settlement, and 2) the settlement is fair, adequate and reasonable." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

The Eleventh Circuit has held that in determining whether a proposed settlement is "fair, adequate and reasonable," a court should look to the following *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery, (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.

Approval of a class action settlement "is committed to the sound discretion of the district court." *U.S. Oil & Gas*, 967 F.2d at 493. Moreover, in evaluating a settlement, a court is "'entitled to rely upon the judgment of experienced counsel for the parties.'" *Canupp v. Sheldon*, No. 2:04-cv-260-FTM-99DNF, 2009 WL 4042928, at *5 (M.D. Fla. Nov. 23, 2009) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also Warren*, 693 F. Supp. at 1060 (affording "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Indeed, "absent fraud, collusion, or the like," a trial judge "should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330; *accord In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991).

**B.      The Settlement is Fair, Adequate, and Reasonable under *Bennett***

**1.      Likelihood of Success at Trial**

The first and most important *Bennett* factor is "the likelihood of success at trial." *Bennett,* 737 F.2d at 986. This factor is evaluated in the context of the relief proposed by the settlement.

*Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007). This factor favors settlement so long as there is substantial doubt about the Class's ability to prevail at trial. *See Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) (mere fact of potential loss at trial weighed in favor of settlement); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 540 (S.D. Fla. 1988), *aff'd sub nom.*, 899 F.2d 21 (11th Cir. 1990) (approving class action settlement because "[i]f the plaintiff pursued this cause through trial, the likelihood of achieving any success would be at risk"); *Beavers v. Am. Cast Iron Pipe Co.*, 164 F. Supp. 2d 1290, 1298 (N.D. Ala. 2001) ("There are both strengths and weaknesses in each party's position[;] [t]his uncertainty of outcome is another factor favoring approval of the settlement.").

Here, even though the motions to dismiss were defeated and the class certified, Plaintiffs faced risks in litigating this action to a verdict. As noted above, Defendants sought interlocutory review of the order granting class certification. Although Plaintiffs are confident that this Court's decision would withstand appellate scrutiny, the law in this area is unsettled, and there was a risk that the Eleventh Circuit would take the appeal and ultimately rule in Defendants' favor.

If Plaintiffs prevailed on class certification, they would have had to prove every element of their cause of action and negate every affirmative defense in order to recover. Defendants would have argued at trial that the Company's financial statements were accurate, and that Defendants' statements about Green Tree's compliance policies and procedures were literally true and not misleading because Green Tree had a robust compliance program. Proving scienter at trial would have required showing not just negligence but severe recklessness, posing additional substantial risk and uncertainty. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1330 (S.D. Fla. 2001). Defendants would have argued that they did not knowingly deceive investors, pointing to Green Tree's strong servicing record and contending that the FTC/CFPB

investigation did not raise any red flags and that they had no reason to believe the CFPB had any serious issues with the company until October 2013—over a year after the challenged statements concerning the Company's legal compliance and audit controls were made on September 11, 2012. Though Plaintiffs do not believe the jury would agree with Defendants, there was certainly no guarantee of success.

Plaintiffs would also have faced substantial challenges in proving loss causation and damages. At trial, Plaintiffs would have attempted to recover damages based on all of the alleged corrective disclosures: March 18, 2013, November 6, 2013, February 27, 2014, August 11, 2014, and February 26, 2015. However, the Court had only specifically upheld the alleged corrective disclosures on March 18, 2013 and August 11, 2014.[3] Defendants would also have argued that these disclosures did not correct any earlier alleged misstatements and were not a substantial cause of any stock-price declines. For example, Defendants argued that the March 18, 2013 disclosure of a material weakness in the Company's internal controls pertained to financial reporting and was thus entirely unrelated to the issues investigated by the CFPB. Defendants also argued that the stock-price declines on each of these dates were entirely attributable to other, unrelated confounding factors, such as the Company's negative earnings report and guidance on

---

[3] Plaintiffs initially alleged several corrective disclosures in the First Amended Complaint: (1) the March 18, 2013 disclosure that the Company had identified a material internal control weakness; (2) the November 6, 2013 announcement that the CFPB was considering recommending an enforcement action against Green Tree, and (3) the February 27, 2014 disclosure that the FTC and CFPB were seeking authority to bring an action against Green Tree. In the Second Amended Complaint, Plaintiffs also alleged that the August 11, 2014 disclosure of the government's intention to seek injunctive relief and fines was corrective. The Court held that March 18, 2013 and August 11, 2014 were adequately pled as a corrective disclosure, but that the other two announcements standing alone failed to plead loss causation under *Meyer v. Greene*, 710 F.3d 1189 (11th Cir. 2013).

August 11, 2014. Defendants' expert argued that there was no basis to conclude that any portion of the stock declines cited by Plaintiffs were due to the revelation of Defendants' fraud.

Whether the alleged corrective disclosures caused the Company's stock price to decline would be addressed largely by expert testimony, and "[i]n the battle of experts, it is virtually impossible to predict with certainty which testimony will be credited." *Behrens*, 118 F.R.D. at 542 (citation omitted). Plaintiffs do not believe the jury would agree with Defendants on either of these issues, but it might.

In short, Defendants had many different ways to reduce the damages they would have to pay, and might win at trial or summary judgment outright. This factor thus weighs in favor of settlement approval.

### 2.   Considering the Range of Possible Recovery, the Settlement Is Clearly Within the Range of Reasonableness

The second and third factors, which are usually combined, require the Court to determine the possible range of recovery and then determine the minimum fair, reasonable, and adequate settlement within that range. *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005). The Court must evaluate the settlement "in light of the attendant risks with litigation." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011) (internal quotations omitted). Courts in this district emphasize that settlement is compromise and requires "an abandoning of highest hopes." *Id.* (internal quotations omitted).

Plaintiffs' damages expert concluded that their "best case" damages recovery, based on the disclosures on March 18, 2013, November 6, 2013, February 27, 2014, August 11, 2014, and February 26, 2015, was $440 million. The Settlement represents 5.5% of this best-case scenario, which assumes prevailing on every single loss causation / stock drop allegation at trial, which is highly unlikely. Defendants vigorously disputed Plaintiffs' damages estimates and, under their

analysis, assert Class-wide damages to be zero, or at least much less. The Settlement is an excellent recovery, returning more than triple the average settlement in cases of this size. *See* Rosen Decl. Ex. 7.

A more conservative damages scenario is based on the two corrective disclosures that the Court upheld for loss causation: March 18, 2013 and August 11, 2014, collectively representing damages of $240 million. The Settlement represents 10.0% of this estimate of the likely damages recoverable at trial.

The table below illustrates the potential recovery under different damages scenarios, how the Settlement compares to each, and the historical median settlement for cases within the same range of damages as those estimated in this case:

| Selected Corrective Disclosures[4] | Maximum Recovery | Settlement as % of Maximum Recovery | Median settlement as percentage of damages |
|---|---|---|---|
| August 11, 2014 | $120 million | 20% | 3.4% |
| March 18, 2013 and August 11, 2014 | $240 million | 10% | 2.6% |
| All of the alleged corrective disclosures | $440 million | 5.46% | 1.8% |

As the above table demonstrates, the Settlement far surpasses the median settlement amount, under any scenario, which is strong evidence of its reasonableness and fairness. *See also In re Charter Commc'ns, Inc. Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at * 6

---

[4] These estimates also assume a recovery for 100% of the price decline following each corrective disclosure, and do not account for any confounding information released on the same day, which would reduce damages even further.

(E.D. Mo. June 30, 2005) (average settlements since 1995 were for 5.5% to 6.2% of estimated losses); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1332 (approving settlement for 10.7% of damages); *Behrens.*, 118 F.R.D. at 543 (finding a 5.7% recovery to be well within the range of appropriate settlements).

Additionally, the Settlement provides for payment to Class Members now, without delay, and not some wholly-speculative hope of a potentially larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Thus, this factor strongly favors approval.

A settlement of 5.5% of maximum estimated damages is a very substantial recovery in light of the substantial risks of successfully litigating this case through trial. This factor thus weighs in favor of approval.

### 3.   The Complexity, Expense, and Likely Duration of Continued Litigation

"A securities case, by its very nature, is a complex animal*." In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (internal quotations omitted). Further, complex class actions are "notably difficult and notoriously uncertain." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014) (internal quotations omitted). The Court should consider the significant burden this case would have imposed if it went to trial. *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992).

Had this case continued, the parties would have continued the briefing of Defendant's Rule 23(f) petition, which may or may not have been granted. If the petition were granted, however, the parties would have engaged in additional time-consuming appellate briefing.

Assuming Plaintiffs prevailed, the parties would incurred additional substantial expense and efforts in completing discovery, filing motions for summary judgment, and preparing for trial.

In addition, as discussed above, this case had its share of complex issues. In particular, the action involved complex and costly expert testimony. Plaintiffs had retained a financial expert who provided an opinion on market efficiency for purposes of class certification. Defendants had retained a financial expert who testified on the same subjects as Plaintiffs' corresponding expert. Had the case continued, both parties would have required additional analysis and testimony from financial experts for trial on issues of market efficiency, loss causation, and damages. By negotiating low fee agreements and seeking only necessary work, Plaintiffs have kept expenses low. But in Class Counsel's experience, ongoing discovery and trial preparation would have substantially increased costs to the Class. This factor thus supports approval.

### 4.       The Reaction of the Class

The overwhelmingly positive reaction of class members to a proposed settlement is a significant factor, and the absence of objections "is excellent evidence of the settlement's fairness and adequacy." *Ressler*, 822 F. Supp. at 1556; *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("[t]he fact that no objections have been filed strongly favors approval of the settlement").

Over 39,000 notice claim packets were mailed to potential Class Members and nominees. *See* Bravata Dec. ¶ 6. The Notice apprised Settlement Class Members of their right to object to the Settlement, the Plan of Allocation, or to Lead Counsel's application for attorneys' fees and expenses, and the procedure to object or seek exclusion. *Id.* at Ex. A. To date, there have been no objections to Lead Counsel's request for expenses. *Id.* at ¶¶ 6, 10. The deadline to object is

September 28, 2016. *Id*. To date, only one Class Member has opted out of the Settlement. *Id*. at ¶ 9. The deadline to opt out was September 1, 2016. *Id*.

### 5.    The Stage of Proceedings

The purpose of considering the stage of the proceedings is to ensure that plaintiffs had sufficient information to evaluate the case and to determine the adequacy of the settlement. *Behrens*, 118 F.R.D. at 544. "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Checking Account Overdraft*, 830 F. Supp. 2d at 1349.

Here, Plaintiffs had a strong understanding of the strengths and weaknesses of their case, and thus have an ample basis for making an informed judgment that the settlement is fair and reasonable. Plaintiffs had defeated Defendants' motion to dismiss and obtained class certification. Plaintiffs took the deposition of Defendants' financial expert and had a full understanding of the challenges they faced in maintaining class certification through trial and in proving loss causation and damages. Moreover, at the time of settlement, Defendants had filed a Rule 23(f) petition for interlocutory review of the class certification decision

Plaintiffs also had a solid grasp of the factual merits of the case. Plaintiffs reviewed over 85,000 pages of documents, consulted with experts, took and/or defended four depositions, prepared for the depositions of fact witnesses, and attended two all-day mediation sessions with a well-regarded mediator. *See* Rosen Decl. ¶¶ 3–10. The parties engaged in extensive presentations at the mediations vetting the evidence and setting out their positions on the facts, and the application of the law to the evidence.

Thus, this factor favors approval. *See Sunbeam*, 176 F. Supp. 2d at 1332 (because the "case had progressed to a point where each side was well aware of the other side's position and

the merits thereof[,] [t]his factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable"); *Behrens*, 118 F.R.D. at 544.

    **C.**    **Settlement Negotiations Were at Arm's Length**

    "[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Newberg on Class Actions*, § 11.51 at 11.88 (4th ed. 1992). There is no hint of collusion in this settlement, which was achieved only after two years of hard-fought litigation, which, as noted, included the filing of four complaints, briefing on two motions to dismiss, highly contested class certification proceedings, two full-day mediations which included extensive presentations of evidence and legal positions, and substantial discovery.

    Settlement negotiations began with a mediation conference in October 2015 attended by all the parties and overseen by an impartial mediator, which ended unsuccessfully without a settlement. Negotiations resumed in earnest only after Plaintiffs had won their motion for class certification, and a settlement was finally reached at a second full-day mediation in New York. Class Counsel represents that the negotiations were at arm's-length at all times.

    Thus, there was no fraud or collusion, and negotiations were at arm's length, and this factor weighs heavily in favor of approval. *Checking Account Overdraft*, 830 F. Supp. 2d at 1345.

    **D.**    **The Recommendation of Experienced Counsel Supports Approval of the Settlement**

    The Court is entitled to rely on the judgment of counsel, and, indeed, "'should be hesitant to substitute its own judgment for that of counsel.'" *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 703 (M.D. Fla. 2005) (quoting *Cotton*, 559 F.2d at 1330); *see also In re Smith*, 926 F.2d at 1028. Co-Lead Counsel have collectively served as lead or co-lead counsel in well over

200 successful securities class actions, and both believe the Settlement is fair, reasonable, and adequate. Rosen Decl. ¶ 16; Declaration of Murielle J. Steven Walsh, attached to the Rosen Decl. as Ex. 3. Accordingly, as in *Strube*, "counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube*, 226 F.R.D. at 703.

## V.   THE PLAN OF ALLOCATION SHOULD BE APPROVED

The standard for approval of a plan of allocation is the same as for a settlement: whether it is "fair, adequate and reasonable and is not the product of collusion between the parties." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).

The Plan of Allocation was formulated with the aid of Plaintiffs' financial experts and designed to reimburse class members to the extent of their damages under the securities laws. "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994). After taking into account lack of loss causation and the timing of Class Members' stock purchases and sales, the Plan of Allocation does not discriminate between Class Members in the same position. The Net Cash Settlement Amount is distributed on a pro rata basis depending on Class Members' recognized losses. Accordingly, the Plan of Allocation is fair and adequate and should be approved.

## VI.   CONCLUSION

Accordingly Plaintiffs respectfully request that the Court finally approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate. The Proposed Judgment, which was previously submitted with the preliminary approval papers, will also be submitted with Plaintiffs' reply papers, after the objection deadline has passed.

Dated: September 9, 2016                                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By:\_\_\_\_[/s/ Laurence Rosen\_\_\_\_]
Laurence M. Rosen (FBN 0182877)
Jonathan Stern (*pro hac vice*)
275 Madison Avenue, 34th Floor
New York, New York 10016
Phone: 212-686-1060
Fax: 212-202-3827
Email: lrosen@rosenlegal.com
        jstern@rosenlegal.com

**POMERANTZ LLP**
Murielle J. Steven Walsh (*pro hac vice*)
Jeremy A. Lieberman (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Phone: 212-661-1100
Fax: 212-661-8665
Email: jalieberman@pomlaw.com
        mjsteven@pomlaw.com

**POMERANTZ LLP**
Jayne A. Goldstein (FBN 144088)
1792 Bell Tower Lane, Suite 203
Weston, Florida 33326
Phone: 954-315-3454
Fax: 954-315-3455
Email: jagoldstein@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Phone: 312-377-1181
Fax: 312-377-1184
Email: pdahlstrom@pomlaw.com

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 9, 2016 a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>[/s/ Laurence Rosen]</u>