**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 1:14-cv-20880-UU
Judge: Hon. Ursula Ungaro

RICHARD THORPE and DARREL WEISHEIT,
Individually and on Behalf of All Others Similarly
Situated,

                                 Plaintiffs,

                            v.

WALTER INVESTMENT MANAGEMENT,
CORP., KEITH A. ANDERSON, BRIAN COREY,
MARK J. O'BRIEN, DENMAR DIXON,
CHARLES E. CAUTHEN and C. MARC HELM,

                           Defendants.

## MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES

## TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ................................................................................... 1

II.     CLASS COUNSEL'S EFFORTS FOR THE CLASS ............................................... 3

III.    THE REQUESTED FEE AND EXPENSES ARE REASONABLE AND SHOULD
        BE APPROVED ............................................................................................................ 4

        A.      The "Percentage of the Fund" Method is the Appropriate Basis for Awarding
                Attorneys' Fees in the Eleventh Circuit .............................................................. 4

        B.      The Requested Fee is Reasonable Under the *Camden* factors ............................... 5

                1.      Awards in Similar Cases ............................................................................. 6

                2.      Time and Labor Required / Lodestar Cross-Check. ..................................... 7

                3.      The Novelty and Difficulty of the Questions Involved ................................ 8

                4.      The Skill Required to Perform the Legal Services Properly, and the
                        Experience, Reputation, and Ability of the Attorneys ............................... 10

                5.      Preclusion of Other Employment ............................................................. 11

                6.      The Customary and Contingent Nature of the Fee .................................... 12

                7.      The Results Obtained ............................................................................... 13

                8.      The "Undesirability" of the Case ............................................................. 14

                9.      The time limitations imposed by the client or the circumstances .............. 15

        C.      Important Public Policy Considerations Support the Requested Fees ................. 15

        D.      Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to
                Achieve the Benefit Obtained .............................................................................. 16

IV.     THE COURT SHOULD APPROVE COMPENSATORY AWARDS FOR THE
        CLASS REPRESENTATIVES ................................................................................. 17

V.      CONCLUSION ........................................................................................................... 18

CERTIFICATE OF SERVICE ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ..................................................................... 16

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013) ............................................................................................ 16

*Aranaz v. Catalyst Pharmaceutical Partners Inc.*,
  No. 13–cv–23878–UU, D.E. 153 (S.D. Fla. 2015) ...................................................... 6

*Behrens v. Wometco Enterprises, Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988) ................................................................... 8, 12, 16

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) .............................................................................. 10

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .................................................................................................. 5

*Camden I Condo. Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ............................................................................... 5, 6

*Cifuentes v. Regions Bank*,
  No. 11 CV 23455 FAM, 2014 WL 1153772 (S.D. Fla. Mar. 20, 2014) ................................ 17

*City Pension Fund for Firefighters and Police Officers in the City of Miami Beach*
  *v. Aracruz Celulose S.A.*,
  No. 08-cv-23317-JAL, D.E. 201 (S.D. Fla. July 17, 2013) ........................................... 7, 15, 18

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................... 10

*Dance v. Levitt Corporation*,
  No. 08-cv-60111-DLG, D.E. 151 (S.D. Fla. Sep. 29, 2011) ....................................... 7

*David v. Am. Suzuki Motor Corp.*,
  2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ........................................................... 10

*Dowdell v. City of Apopka*,
  698 F.2d 1181 (11th Cir. 1983) ............................................................................... 16

*Fuller v. Imperial Holdings*,
  No. 11-cv-81184-KAM, D.E. 95 (S.D. Fla. Dec. 16, 2013) ........................................... 6, 15, 18

*GAMCO Investors, Inc. v. Vivendi, S.A.,*
   927 F. Supp. 2d 88 (S.D.N.Y. 2013) ................................................................... 14

*Halliburton Co. v. Erica P. John Fund, Inc.,*
   No. 13-317 ...................................................................................................... 9, 16

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) ........................................................................................... 13

*Howard v. Chanticleer Holdings, Inc.,*
   No. 12- cv-81123-JIC, D.E. 74 (S.D. Fla. 2014) .............................................. 6, 15

*Howard v. Chanticleer Holdings, Inc.,*
   No. 12-81123-CIV, 2013 WL 104998 (S.D. Fla. Jan. 4, 2013) ............................ 10

*In re "Agent Orange " Prod. Liab. Litig.,*
   611 F. Supp. 1396 (E.D.N.Y. 1985) .................................................................... 14

*In re AOL Time Warner, Inc. Sec.,*
   No. 02 CIV. 5575 (SWK), 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ................ 6

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,*
   No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ................... 13, 14

*In re Checking Account Overdraft Litig.,*
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........................................................ 5, 12, 18

*In re Friedman's, Inc. Sec. Litig.,*
   No. 1:03-CV-3475WSD, 2009 WL 1456698 (N.D. Ga. May 22, 2009) ................. 17

*In re Genta Sec. Litig.,*
   No. CIV. A. 04-2123 JAG, 2008 WL 2229843 (D.N.J. May 28, 2008) ................. 17

*In re Immune Response Sec. Litig.,*
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................ 17

*In re Lease Oil Antitrust Litig. (No. II),*
   186 F.R.D. 403 (S.D. Tex. 1999) .......................................................................... 6

*In re Petrobras Sec. Litig.,*
   104 F. Supp. 3d 618 (S.D.N.Y. 2015) .................................................................. 10

*In re Rite Aid Corp. Sec. Litig.,*
   146 F.Supp.2d 706 (E.D. Pa. 2001) ..................................................................... 14

*In re Sterling Fin. Corp. Sec. Class Action,*
   No. CIV.A. 07-2171, 2009 WL 2914363 (E.D. Pa. Sept. 10, 2009) ........................ 9

*In re Sunbeam Sec. Litig.*,
    176 F. Supp. 2d 1323 (S.D. Fla. 2001) ............................................................... 9, 11

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*,
    631 F. Supp. 2d 1151 (D. Minn. 2009)....................................................................... 17

*Ingram v. The Coca-Cola Co*,
    200 F.R.D. 685 (N.D. Ga. 2001) ................................................................................. 8

*Mashburn v. Nat'l Healthcare, Inc.*,
    684 F. Supp. 679 (M.D. Ala. 1988) ............................................................................. 8

*May v. Levy*,
    No. 07-cv-61333-PCH, D.E. 68 (S.D. Fla. Dec. 19, 2008) ........................................ 7

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ................................................................................. 15

*Miller v. Dyadic International, Inc*.,
    No. 07-cv-80948-WPD, D.E. 236 (S.D. Fla. July 28, 2010)....................................... 7

*Missouri v. Jenkins by Agyei*,
    491 U.S. 274 (1989) ..................................................................................................... 8

*Murdeshwar v. Searchmedia Holdings Ltd.*,
    No. 11-cv-20549, D.E. 103 (S.D. Fla. Apr. 25, 2012) ......................................... 6, 15

*Norman v. Hous. Auth. of Montgomery*,
    836 F.2d 1292 (11th Cir. 1988) ................................................................................. 12

*Pace v. Quintanilla*,
    No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014)............................. 10

*Pinto v. Princess Cruise Lines Ltd.*,
    513 F. Supp. 2d 1334 (S.D. Fla. 2007) ......................................................... 8, 12, 18

*Ray v. Lundstrom*,
    No. 4:10CV3177, 2012 WL 5458425 (D. Neb. Nov. 8, 2012) ................................... 8

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992) .....................................................................*passim*

*Robbins v. Koger Props.*,
    116 F.3d 1441(11th Cir. 1997) ................................................................................. 13

*Schorrig v. IBM Southeast Employees' Federal Credit Union*,
    No. 09-cv-80973-KLR, D.E. 155 (S.D. Fla. Feb. 24, 2012) ........................... 7, 15, 18

*Vinh Nguyen v. Radient Pharm. Corp.*,
No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014)................................ 10

*Waterford Township General Employees Retirement System v. Bankunited*
*Financial Corporation*,
No. 08-cv-22572-MGC, D.E. 164 (S.D. Fla. June 14, 2013).................................................... 7

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) ................................................................................................ 8

**Rules**

Fed. R. Civ. P. 23................................................................................................................. 1, 4, 9

**Other Authorities**

Alba Conte, *Attorney Fee Awards* (3d ed. 2006) ......................................................................... 16

Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action*
*Litigation: 2015 Full-Year Review* (NERA Economic Consulting, 2015).............................. 14

## I.        PRELIMINARY STATEMENT

Plaintiffs and Class Representatives Richard Thorpe and Darrel Weisheit hereby move under Federal Rule of Civil Procedure 23(e) for an order (1) awarding attorneys' fees in the amount of $8,000,000; (2) awarding reimbursement of $324,443 in expenses incurred in prosecuting this action; and (3) granting a compensatory award of $15,000 for each of the Class Representatives. Class Counsel have successfully secured a considerable $24 million settlement for the Class in a case that was fraught from risk at its inception. This action was filed in the wake of a series of disclosures raising questions about the business practices of Walter Investment Management, Corp. ("Walter Investment" or the "Company") and its subsidiary Green Tree Servicing LLC ("Green Tree")—in particular that the CFPB and FTC were demanding that the Company pay monetary fines and agree to injunctive relief to avoid enforcement action.

From the outset, this action presented numerous complicated issues regarding loss causation and damages, and was hard-fought by the parties at every stage. Plaintiffs filed four complaints, and opposed two motions to dismiss. The Settlement was only reached after the Court denied certain Defendants' motion to dismiss the Second Amended Complaint, and certified a class. By the time of the Settlement, discovery was well under way, and Plaintiffs had reviewed approximately 85,000 pages of documents.

Class Counsel now request a payment of attorneys' fees of one third of the settlement, or $8,000,000, as well as reimbursement of expenses of $324,443, and compensatory awards in the amount of $15,000 for each of the lead plaintiffs. The attorneys' fees requested are well within the parameters recognized as appropriate in federal securities class actions such as this litigation, both under a percentage of recovery analysis and under a lodestar cross-check analysis. The

requested fees are further supported given the exceptional result obtained by Class Counsel, given the high risks of continued litigation. Even measured against Plaintiff's best case scenario damages of $440 million (assuming that the Class Point won on every single point at trial), the Settlement recovers 5.5% of these damages, which is triple the median 1.8% recovered in similar sized cases.

Furthermore, Class Counsel's actual litigation expenses in the amount of $324,443 are reasonable, and are of the kind that attorneys typically incur in the prosecution of complex securities class actions such as this one. Finally, Plaintiffs' request for compensatory awards for each of the class representatives of $15,000 apiece is reasonable and should be approved. In the Eleventh Circuit and in other courts around the country, class representatives are often granted service awards from the settlement to compensate them for their time and the risks they incurred. In this case, both Class Representatives participated extensively in this litigation. Each of the Plaintiffs spent substantial time and effort reviewing documents and travelling and preparing for their depositions and attending a mediation. The Class Representatives have shown diligence and dedication to this case and have made personal sacrifices for the Class, which now benefits from their efforts.

The favorable reaction of the Class to these requests weighs strongly in support of approval of these requests. Over 39,000 Notices have been mailed to Class Members detailing the specifics of the settlement and stating that Class Counsel would seek up to 1/3 of the Settlement as attorneys' fees, up to $500,000 in reimbursement of expenses, and $15,000 compensatory awards for the Class Representatives. To date, no Class Member has objected to the settlement or fee request, and only one Class Member has opted out of the Settlement.

## II.   CLASS COUNSEL'S EFFORTS FOR THE CLASS.

This Action was hard-fought from the beginning. Class Counsel filed the initial complaint on March 7, 2014 and the First Amended Complaint on July 7, 2014. D.E. 47.[1] In drafting the First Amended Complaint, Class Counsel, among other things, engaged a private investigator, spoke with confidential witnesses, reviewed the Company's extensive SEC filings and other publicly available information about it and about Green Tree Servicing LLC ("Green Tree"). *See* Declaration of Laurence Rosen in Support of Final Approval of Class Action Settlement and Award of Attorneys' Fees and Reimbursement of Expenses ("Rosen Decl.") ¶ 3.

Defendants moved to dismiss. D.E. 56. On December 23, 2014, the Court granted Defendants' motions to dismiss, but granted leave to amend. D.E. 71.

On January 6, 2015, Plaintiffs filed the Second Amended Complaint. D.E. 73. Defendants moved to dismiss. On June 30, 2015, the Court granted in part and denied in part Defendants' motions to dismiss. Thereafter, Plaintiffs filed their Third Amended Class Action Complaint, which was the operative complaint in this Action.

The parties then began discovery. Discovery in this case, though conducted professionally, was heavily contested. Plaintiffs served and responded to comprehensive requests for production. The parties engaged in numerous meet and confer sessions regarding discovery disputes, and substantially narrowed the issues. Rosen Decl. ¶¶ 6–10. Class Counsel reviewed over 85,000 pages of documents produced by the Defendants, and served a subpoena on the Company's outside auditing firm. Counsel also prepared for depositions of fact witnesses.

---

[1] Plaintiffs filed a voluntary notice of dismissal for Mr. Back concurrently with the Amended Complaint, and Mr. Weisheit joined the action as a proposed Class Representative.

On August 31, 2015, Plaintiffs filed their motion for class certification. D.E. 114. Plaintiffs relied on the "efficient market" presumption of reliance. Defendants took the depositions of both Class Representatives. Defendants' opposition to Plaintiffs' motion to certify relied on the declaration of their expert, Dr. Kenneth M. Lehn. Plaintiffs deposed Dr. Lehn and filed their reply brief in support of class certification on December 11, 2015. D.E. 131. In addition, Defendants took the deposition of Plaintiffs' expert, Dr. Zachary Nye of Stanford Consulting. In total, there were four depositions taken in this case. Rosen Decl. ¶ 8.

While the class certification motion was pending and after exchanging mediation briefs, the parties personally appeared for an all-day mediation on October 27, 2015 in New York with the Hon. Layn Phillips. A settlement was not reached at the mediation.

On March 16, 2016, the Court granted Plaintiffs' motion for class certification. D.E. 132.[2] Settlement discussions then resumed in earnest, and the parties agreed to resolve the action for $24 million. Subsequently, the parties negotiated the Stipulation of Settlement, and Plaintiffs drafted and filed their motion in support of preliminary approval of settlement on May 20, 2016.

## III.     THE REQUESTED FEE AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

### A.     The "Percentage of the Fund" Method is the Appropriate Basis for Awarding Attorneys' Fees in the Eleventh Circuit

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In the Eleventh Circuit, "attorneys' fees

---

[2] Defendants subsequently sought interlocutory appellate review under Federal Rule of Civil Procedure 23(f). The parties later began settlement talks, and the Eleventh Circuit issued an order on May 27, 2016 granting the parties' request to stay the proceedings pending settlement talks.

awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991); see *also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011). This approach is appropriate because it encourages counsel to obtain the maximum recovery at the earliest possible stage of the litigation and, hence, most fairly correlates plaintiffs' counsel's compensation to the benefit achieved for the class. There is no "hard and fast" rule dictating what constitutes a reasonable percentage of the recovery to award "because the amount of any fee must be determined upon the facts of each case." *Camden*, 946 F.2d at 775.[3]

### B.   The Requested Fee is Reasonable Under the *Camden* factors

Under *Camden*, the court first fixes a benchmark, and then considers the so-called *Camden* factors to determine what constitutes a reasonable percentage award. *See Camden*, 946 F.2d at 773, 775. These factors include: (i) awards in similar cases; (ii) the time and labor required; (iii) the novelty and the difficulty of the questions; (iv) the skill requisite to perform the legal service properly, including the experience, reputation, and ability of the attorneys; (v) the preclusion of other employment by the attorney due to the acceptance of the case; (vi) the customary fee, including whether the fee is fixed or contingent; (vii) the amount involved and the results obtained; (viii) the "undesirability" of the case; and (ix) limitations imposed by the client or the circumstances; and (x) the nature and length of the professional relationship with the client.[4]

---

[3] In this regard, the Eleventh Circuit expressly noted that "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Id.* at 774-75.

[4] Class counsel had no relationship with the Class Representatives before this action; thus, this factor is neutral.

### 1.      Awards in Similar Cases

*Camden*, decided in 1991, suggested that an appropriate initial bench mark for attorneys'
fees is 25%, which should be adjusted based on the specific facts of the case. *Camden*, 946 F.2d
at 775. However, courts typically award higher percentages in securities class actions due to the
unique characteristics and challenges posed in such cases. In particular, securities fraud cases
implicate highly complex issues, require an extraordinary investment of time and resources, and
provide class members with hard cash, instead of coupons.[5]

In recent orders awarding fees in securities class action settlements, courts have awarded
attorneys' fees of 30% or 33 % of the settlement fund. *See* Rosen Decl. Ex. 6; *In re Groupon
Sec. Litig.*, No. 12 CV 2450, 2016 U.S. Dist. LEXIS 95881, at *1 (N.D. Ill. July 13, 2016)
(awarding "30% of the Settlement Fund, or $13,500,000"); *Aranaz v. Catalyst Pharmaceutical
Partners Inc.*, No. 13–cv–23878–UU, D.E. 153 at ¶ 18 (S.D. Fla. 2015); *Howard v. Chanticleer
Holdings, Inc.*, No. 12- cv-81123-JIC, D.E. 74 at ¶ 4 (S.D. Fla. 2014) (33$^{1/3}$% of $850,000 fund);
*Fuller v. Imperial Holdings*, No. 11-cv-81184-KAM, D.E. 95 (S.D. Fla. Dec. 16, 2013) (30% of
$12 million fund); *Murdeshwar v. Searchmedia Holdings Ltd.*, No. 11-cv-20549, D.E. 103 at ¶
14 (S.D. Fla. Apr. 25, 2012) (33$^{1/3}$% of $2.75 million fund); *Schorrig v. IBM Southeast
Employees' Federal Credit Union*, No. 09-cv-80973-KLR, D.E. 155 at ¶ 11 (S.D. Fla. Feb. 24,
2012) (30% of $950,000 fund); *City Pension Fund for Firefighters and Police Officers in the
City of Miami Beach v. Aracruz Celulose S.A.*, No. 08-cv-23317-JAL, D.E. 201, at ¶ 14 (S.D.
Fla. July 17, 2013) (33 1/3% of $37.5 million fund); *Waterford Township General Employees
Retirement System v. Bankunited Financial Corporation*, No. 08-cv-22572-MGC, D.E. 164 at ¶

---

[5] *See In re AOL Time Warner, Inc. Sec.*, No. 02 CIV. 5575 (SWK), 2006 WL 3057232, at *10
(S.D.N.Y. Oct. 25, 2006); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 447 (S.D.
Tex. 1999) (antitrust class action with cash payment).

11 (S.D. Fla. June 14, 2013) (30% of $3,000,000 fund); *Dance v. Levitt Corporation*, No. 08-cv-60111-DLG, D.E. 151 at ¶ 14 (S.D. Fla. Sep. 29, 2011) (33 1/3% of $1,948,050 fund); *Miller v. Dyadic International, Inc*., No. 07-cv-80948-WPD, D.E. 236 at ¶ 4 (S.D. Fla. July 28, 2010) (33 1/3% of $4,800,000 fund); *May v. Levy*, No. 07-cv-61333-PCH, D.E. 68, at ¶ 13 (S.D. Fla. Dec. 19, 2008) (25% of $600,000 settlement in a case settled before the court decided the motion to dismiss).

### 2.      Time and Labor Required / Lodestar Cross-Check.

Class Counsel has devoted significant time and resources to researching, investigating, and prosecuting of this action. By the time the Settlement was reached, Class Counsel had: (a) investigated the factual circumstances underlying the claims against Defendants; (b) drafted their initial, Amended, Second Amended and operative Third Amended Complaint; (c) defeated certain Defendants' motions to dismiss; (d) engaged in extensive document discovery and reviewed over 85,000 pages of documents; (e) prepared for and took and/or defended the depositions of the class representatives and the experts in the case; (f) successfully obtained class certification despite vigorous opposition from the Defendants; (g) prepared a mediation statement and participated in an all-day mediation with Hon. Layn Phillips in New York; and (h) negotiated the specific terms of the Settlement. *See* Rosen Decl. ¶ 10.

Indeed, Class Counsel expended approximately 3,823 hours with a lodestar of $2,233,022, at current billing rates, reflecting a multiplier around 3.58.[6] Declaration of Laurence

---

[6] The Supreme Court has held that the use of current rather than historical rates is appropriate in examining the lodestar because current rates more adequately compensate for inflation and the loss of use of funds. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989). Courts in this Circuit also have stated that it is appropriate to use counsel's current rates in order to compensate for the delay in payment and inflation. *See, e.g., Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 546 (S.D. Fla. 1988). Rates of The Rosen Law Firm, P.A. and Pomerantz LLP are

Rosen on Behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses,

attached to the Rosen Decl. as Ex. 2; Declaration of Murielle J. Steven Walsh on Behalf of

Pomerantz LLP Concerning Attorneys' Fees and Expenses, attached to the Rosen Decl. as Ex. 3.

While not required in the Eleventh Circuit, an analysis of the requested fee under the

"lodestar/multiplier" approach further supports the reasonableness of an award of one-third of

the Settlement Amount fee. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th

Cir. 1999) ("while we have decided in this circuit that a lodestar calculation is not proper in

common fund cases, we may refer to that figure for comparison"). The 3.58 multiplier requested

here is within the range of multipliers frequently awarded in class action settlements of similar

magnitude in courts within the Eleventh Circuit. *See, e.g, Pinto v. Princess Cruise Lines Ltd.*,

513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that lodestar multipliers "'in large and

complicated class actions' range from 2.26 to 4.5" and that "three appears to be the average");

*Ingram v. The Coca-Cola Co*, 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee

representing a multiplier between 2.5 and 4); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp.

679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 in a national class action

securities case is not unusual or unreasonable.").

    As such, the time and labor expended justify the fee requested.

### 3.    The Novelty and Difficulty of the Questions Involved

    Class Representatives faced all the "multi-faceted and complex legal questions endemic"

to cases based on alleged violations of federal securities law. *Ressler v. Jacobson*, 149 F.R.D.

651, 654 (M.D. Fla. 1992); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla.

2001) (same). Moreover, "securities actions have become more difficult from a plaintiff's

---

similar to those charged here were approved in *Ray v. Lundstrom*, No. 4:10CV3177, 2012 WL
5458425 at * 4 (D. Neb. Nov. 8, 2012).

perspective in the wake of the PSLRA." *In re Sterling Fin. Corp. Sec. Class Action*, No. CIV.A. 07-2171, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009). This Action was no exception.

In particular, Class Counsel had to navigate numerous complex issues concerning loss causation, damages, and market efficiency, which necessitated expensive and time-consuming expert testimony at the class certification stage. The Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) ("*Halliburton II*"), which held that Defendants may rebut the presumption of reliance at the class certification stage, further complicated matters. Indeed, although Plaintiffs won class certification, the Defendants sought interlocutory review of the class certification decision, arguing that the Court misapplied *Halliburton II*. Specifically, Defendants claimed that i) the Court improperly imposed on the Defendants a heightened burden of proof for rebutting the presumption of reliance, and ii) the Court erred by not considering direct evidence that Defendants contended negated price impact, simply because the same evidence also related to materiality and loss causation. The case settled before Plaintiffs' response to the Rule 23(f) petition was due. Given that the courts are still teasing out the ramifications of *Halliburton II* in securities cases, if the case continued, there was a real risk that the Eleventh Circuit may have accepted Defendant's petition, necessitating extensive appellate briefing and the possibility that the class certification decision might be overturned.

Even if Plaintiffs prevailed on the Rule 23(f) petition, they would still have faced the arduous task of completing discovery and marshalling the evidence to present their case at trial. Class Counsel would also have had to successfully maintain class certification through trial, and prove damages, requiring additional complicated expert testimony. The results of battles of the experts are notoriously difficult to predict. *City of Providence v. Aeropostale, Inc.*, No. 11 CIV.

7132 CM GWG, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014). Defendants need only win

once; Plaintiffs must win every single time.

        **4.**       **The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys**

      The quality of the representation by Class Counsel and the standing of Class Counsel are

important factors that support the reasonableness of the requested fee. *See Ressler*, 149 F.R.D. at

654; *see also David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362, at *8 n. 15

(S.D. Fla. Apr. 15, 2010) (a court should consider "the skill and acumen required to successfully

investigate, file, litigate, and settle a complicated class action lawsuit such as this one"). Class

Counsel has developed a reputation for zealous advocacy in securities class actions. *In re

Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 625 (S.D.N.Y. 2015) (appointing Pomerantz as sole

lead counsel in multi-billion dollar securities class action and stating that "[t]he Court is familiar

with the Pomerantz firm from previous matters, and finds that it is well qualified to serve as lead

counsel.") (citations omitted); *Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406

DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (Rosen Law Firm "took on significant

risk in this case, working thoroughly and enthusiastically through extensive litigation that

required significant expert involvement"); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014

WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("Indeed, The Rosen Law Firm has appeared

before this Court several times before, and the Court is confident that it has the necessary skill

and knowledge to effectively prosecute this action"); *Bensley v. FalconStor Software, Inc.*, 277

F.R.D. 231, 242 (E.D.N.Y. 2011) ("As the court in *In re Fuwei Films Securities Litigation*

concluded, based on the [Rosen Law] Firm's experience, 'the Rosen Law Firm is well-qualified

to serve as lead counsel in this matter'"); *Howard v. Chanticleer Holdings, Inc.*, No. 12-81123-

CIV, 2013 WL 104998, at *3 (S.D. Fla. Jan. 4, 2013) ("[T]he Rosen Firm is plainly qualified to

serve as class counsel here"). Class Counsel's hard-won reputation allowed them to credibly threaten to take this case as far as it takes. *See* Rosen Decl. Exs. 2, 3 (Class Counsel's firm resumes).

Class Counsel prosecuted this case zealously and skillfully. As noted above, the case required significant efforts. For example, Class Counsel engaged in two rounds of briefing on Defendants' motions to dismiss the First and Second Amended Complaints. After Plaintiffs' prevailed (in large part) on the motion to dismiss, Class Counsel drafted and filed a Third Amended Complaint in accordance with the Court's instructions.

Similarly, in moving for class certification, Class Counsel expeditiously filed their initial motion, took Defendants' expert's deposition, defended their own expert's deposition, and promptly filed their Reply Brief —notwithstanding the complex issues raised by the recent Supreme Court decision on class certification in securities class actions.

The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work. *See, e.g., Sunbeam,* 176 F. Supp. 2d at 1334; *Ressler*, 149 F.R.D. at 654. Defendants were represented by experienced and highly-skilled lawyers from Simpson Thacher & Bartlett LLP, widely recognized as one of the premier law firms in this country and Holland & Knight LLP, an Am Law 100 which was named a "Florida Powerhouse" by Law360. Defense counsel have reputations for vigorous advocacy in the defense of complex civil cases such as this. Rosen Decl. ¶ 16. That Class Counsel obtained this significant Settlement in the face of such shows that its representation was excellent.

### 5.    Preclusion of Other Employment

When Class Counsel undertook to represent Plaintiffs in this matter, it understood that it would spend significant time and make significant out-of-pocket expenses. Class Counsel did not

settle this case quickly, but only after surviving a motion to dismiss, certifying a class, and nearly completing discovery. The time spent by Class Counsel on this case was at the expense of the time that they could have devoted to other matters.

### 6.    The Customary and Contingent Nature of the Fee

The "customary fee" in a class action lawsuit of this nature is a contingency fee because virtually no individual possesses a sufficiently large stake in the litigation to justify paying his attorneys on an hourly basis. *See Ressler*, 149 F.R.D. at 654; *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

The Court should give substantial weight to the contingent nature of Class Counsel's fees when assessing the fee request. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in determining the award of fees, and that skilled counsel should be encouraged to undertake this risk. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla.2011) ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."); *Pinto*, 513 F. Supp. 2d at 1339 ("attorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee award"); *Behrens*, 118 F.R.D. at 548 (S.D.Fla. 1988) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees").

This case is fully contingent, meaning that Class Counsel has not received any payments whatsoever and have borne more than $320,000 of incurred expenses and paid attorney salaries (not counted in the expense account) for the duration of the case, with no guarantee that they would be successful at trial. In similar cases, plaintiffs' counsel have suffered major defeats after years of litigation, trial, and appeals in which they expended millions of dollars in time and

received no compensation at all. Even a victory at trial does not guarantee success, as the Court is aware from the *BankAtlantic* case. *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605, at *22 (S.D. Fla. Apr. 25, 2011). And even surviving post-trial motions in the district court is no guarantee of success on appeal. *Robbins v. Koger Props.*, 116 F.3d 1441, 1148-49 (11th Cir. 1997) (reversing $81.3 million jury verdict in a securities class action after almost seven years of litigation and rendering judgment in favor of defendant, based on novel ruling that plaintiffs could not establish loss causation by showing the price of the security was inflated by the misrepresentations).

Lead Counsel's efforts in achieving this result have been without compensation of any kind, and its fee and payment of expenses have been wholly contingent upon the result achieved. The contingent nature of Class Counsel's representation strongly favors the requested fee.

### 7.    The Results Obtained

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Ressler*, 149 F.R.D. at 655 ("It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained.").

The settlement amount of $24,000,000 is an outstanding result. Class Counsel retained a damages expert who analyzed Plaintiffs' "best case" recovery, assuming that Plaintiffs maintained class certification, won at trial, and overcame Defendants' affirmative defenses. The expert made several very optimistic assumptions, including that all of the alleged stock drops are attributed to revelation of Defendants' fraud, and that there were no shareholders who could not avail themselves of the presumption of reliance because they did not rely on the integrity of the

market price.[7] With these optimistic assumptions, Class Representatives' expert estimates total maximum damages are $440 million. Rosen Decl. ¶¶ 13–14.[8] The Settlement thus returns an excellent 5.5% of maximum damages, more than triple the average recovery.

Moreover, damages based on the alleged corrective disclosures actually upheld by the Court (*i.e.,* March 18th, 2013 and August 11, 2014) are $240 million. The settlement recovers 10% of these damages. The settlement compares very favorably against the average recovery in cases of comparable size; in cases with estimated damages of $400-$599 million, the median settlement between 1996 and 2015 returned 1.8% of estimated damages. Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review* 33 (NERA Economic Consulting, 2015), attached to the Rosen Decl. as Ex. 7; *In re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses").

Finally, the Settlement provides for payment to Class Members now, without delay, and not some wholly-speculative payment of a hypothetically-larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985).

### 8.    The "Undesirability" of the Case

Class Counsel were the only attorneys willing to accept this difficult case. When Class Counsel took this case on, Plaintiffs faced an uphill battle in meeting the loss causation pleading standard set forth in *Meyer v. Greene*, 710 F.3d 1189 (11th Cir. 2013), which limits the

---

[7] *GAMCO Investors, Inc. v. Vivendi, S.A.*, 927 F. Supp. 2d 88, 95 (S.D.N.Y. 2013) (entering judgment in favor of defendant because investor did not rely on integrity of market price).

[8] Defendants dispute Class Representatives' damages estimate.

circumstances under which the announcement of a government investigation can be said to cause a loss. Indeed, in its order dismissing the First Amended Complaint, the Court held that the November 6, 2013 and February 27, 2014 disclosures were not corrective because, although they revealed the strong possibility of an enforcement action, they did not reveal any finding of fraud or wrongdoing by the Company. Class counsel amended their pleadings yet another time, to add an additional development in the government investigation: the August 11, 2014 announcement that the government was demanding monetary fines and injunctive relief to settle an imminent enforcement action against the Company. Class Counsel successfully argued that this last disclosure sufficiently apprised investors of the probability of fraud at the Company, and prevailed on Defendants' motion to dismiss the Second Amended Complaint. This success was an against-the-odds win and speaks to Class Counsel's creativity and tenacious representation of the Class interests.

### 9.      The time limitations imposed by the client or the circumstances

While not a limitation per se, Class Counsel worked with the Court's schedule to take this case through from filing to settlement hearing in about 31 months. This rapid-paced litigation ensures that class members will receive payments much more quickly than investors usually do in securities class actions, warranting a higher award. *Ressler*, 149 F.R.D. at 655.

### C.      Important Public Policy Considerations Support the Requested Fees

Public policy considerations support the requested fee award, as courts recognize that compensating attorneys in securities class actions is important. "Congress, the Executive Branch, and this Court, moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and

Exchange Commission.'" *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1201 (2013). Courts should award fees high enough to encourage lawyers to bring meritorious actions. *Ressler*, 149 F.R.D. at 657; *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1217 (S.D. Fla. 2006). In this case, the rationale is especially compelling. Class Counsel have delivered class members more than triple what the median securities class action provides.

> **D.      Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained.**

Litigation expenses should be reimbursed if they are "reasonable and necessary to obtain the settlement." *Ressler*, 149 F.R.D. at 657; *see also Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered); *Behrens*, 118 F.R.D. at 549 ("plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action"); 1 Alba Conte, *Attorney Fee Awards*, § 2.19, at 73-74 (3d ed. 2006) ("Alba Conte") ("an attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved").

Class Counsel efficiently litigated this action and incurred expenses totaling $324,443 in connection with the prosecution and resolution of the Action. *See* Rosen Decl. Exs. 2-3. These expenses include amounts incurred to pay fees of consulting experts, mediation fees, copying, telephone, travel costs, computer-assisted research, court fees, travel, mailing and fax costs, and other customary expenditures.

Travel, experts, copying, court fees, claims administration and other customary expenditures should be reimbursed. *In re Friedman's, Inc. Sec. Litig.*, No. 1:03-CV-3475WSD, 2009 WL 1456698, at *4 (N.D. Ga. May 22, 2009); *Cifuentes v. Regions Bank*, No. 11 CV

23455 FAM, 2014 WL 1153772, at *8 (S.D. Fla. Mar. 20, 2014). Courts differ about whether

legal research costs are recoverable. *See* Alba Conte, 2.19, at n.16 ("Reasonable costs of

computerized legal research are generally reimbursable")*; In re Immune Response Sec. Litig.*,

497 F. Supp. 2d 1166, 1178 (S.D. Cal. 2007) (computer legal research costs recoverable because

essential); *In re Genta Sec. Litig.*, No. CIV. A. 04-2123 JAG, 2008 WL 2229843, at *11 (D.N.J.

May 28, 2008) (same); *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d

1151, 1160 (D. Minn. 2009) (computer legal research costs are recoverable because they are

routinely assessed to individual clients) *with Friedman's*, 2009 WL 1456698, at *4 (declining to

award reimbursement of legal research costs). Class Counsel request that the Court award

reimbursement for legal research costs, in line with the majority position, as set out in Alba

Conte. Excluding legal research costs, Class Counsel's expenses are approximately $316,496.

      The expenses incurred were reasonable and necessary to successfully prosecute this case.

The Notice informed Settlement Class Members that Class Counsel would seek reimbursement

of expenses in an amount not to exceed $500,000. To date, there have been no objections to

Class Counsel's request for expenses. *See* Declaration of Josephine Bravata Concerning the

Mailing of The Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim

and Release Form ¶ 10, attached to the Rosen Decl. as Ex. 1.

## IV. THE COURT SHOULD APPROVE COMPENSATORY AWARDS FOR THE CLASS REPRESENTATIVES

      Service awards "compensate named plaintiffs for the services they provided and the risks

they incurred during the course of the class action litigation." *In re Checking Account Overdraft*

*Litig.*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011) (granting service awards of $5,000 per class

representative). Courts determine service awards by looking at "(1) the actions the class

representatives took to protect the interests of the class; (2) the degree to which the class

benefited from those actions; and (3) the amount of time and effort the class representatives

expended in pursuing the litigation." *Id*. Courts in this district commonly authorize service

awards. *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007)

($7,500 per plaintiff). Courts in this District have routinely authorized substantial payments to

lead plaintiffs whenever requested in securities class action settlements that were approved. *See*

Rosen Decl. Ex. 7: *Aracruz Celulose* at 16 ($40,000); *IBM* at 11 ($1,500 for each class

representative); and *Imperial Holdings*, at 21 ($10,000).

　　Here, the Class Representatives put forth substantial efforts on behalf of the Class.

Without their contributions, there would have been no case, and no recovery for class members.

And their efforts were substantial. Both Class Representatives travelled to New York City to

attend their depositions and participate in mediation. Both of them also dedicated substantial

time to gathering documents for discovery, reviewing case filings, and preparing for their

depositions. See Declaration of Richard Thorpe, attached to the Rosen Decl. as Ex. 4;

Declaration of Darrel Weisheit, attached to the Rosen Decl. as Ex. 5. The Notice informed the

class that Class Representatives would seek an award not to exceed $15,000 each. To date, there

have been no objections. Thus, the Court should award Class Representatives $15,000 each.

## V.　　CONCLUSION

　　For the foregoing reasons, the Court should award Class Counsel 33 1/3% of the

Settlement Fund, or $8,000,000, as fees; award reimbursement of expenses of $324,443; and

award Class Representatives $15,000 each. A proposed order will be filed with Plaintiffs' reply

papers after the deadline for objections has passed.

Dated: September 9, 2016　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　**THE ROSEN LAW FIRM, P.A.**

By: __[/s/ Laurence Rosen__]
Laurence M. Rosen
Fla. Bar No. 0182877
Jonathan Stern
275 Madison Avenue, 34th Floor
New York, New York 10016
Phone: 212-686-1060
Fax: 212-202-3827
Email: lrosen@rosenlegal.com
       jstern@rosenlegal.com

**POMERANTZ LLP**
Murielle J. Steven Walsh
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Phone: 212-661-1100
Fax: 212-661-8665
Email: jalieberman@pomlaw.com
       mjsteven@pomlaw.com

**POMERANTZ LLP**
Jayne A. Goldstein #144088
1792 Bell Tower Lane, Suite 203
Weston, Florida 33326
Phone: 954-315-3454
Fax: 954-315-3455
Email: jagoldstein@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Phone: 312-377-1181
Fax: 312-377-1184
Email: pdahlstrom@pomlaw.com

*Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, September 9, 2016 a true and correct copy of the

foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF

system.

[/s/ Laurence Rosen]