**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:14-cv-20880-UU
Judge: Hon. Ursula Ungaro

RICHARD THORPE and DARREL
WEISHEIT, Individually and on Behalf of All
Others Similarly Situated,

      Plaintiffs,

      v.

WALTER INVESTMENT MANAGEMENT
CORP., *et al.*,

      Defendants.

_____ /

**ORDER AND FINAL JUDGMENT**

On the 14th day of October, 2016, a hearing having been held before this Court to determine: (1) whether the terms and conditions of the Stipulation of Settlement dated May 20, 2016 (the "Settlement Stipulation") are fair, reasonable and adequate for the settlement of all claims asserted by the Settlement Class against the Defendants (as defined in the Settlement Stipulation), including the release of the Released Claims against the Released Parties, and should be approved; (2) whether judgment should be entered dismissing this action with prejudice; (3) whether to approve the proposed Plan of Allocation as a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members; (4) whether and in what amount to award Plaintiffs' Counsel as fees and reimbursement of expenses; and (5) whether and in what amount to award Plaintiffs as incentive fees; and

The Court having considered all matters submitted to it at the hearing and otherwise; and

It appearing in the record that the Notice substantially in the form approved by the Court in the Court's Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, dated June 13, 2016 ("Preliminary Approval Order") was mailed to all reasonably identifiable Settlement Class Members and posted to the website of the Claims Administrator in accordance with the Preliminary Approval Order and the specifications of the Court; and

It appearing in the record that the Summary Notice substantially in the form approved by the Court in the Preliminary Approval Order was published in accordance with the Preliminary Approval Order and the specifications of the Court;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     All capitalized terms used herein have the same meanings as set forth and defined in the Settlement Stipulation.

1

2.     The Court has jurisdiction over the subject matter of the action, Plaintiffs, all Settlement Class Members, and the Defendants.

## I.     Settlement Class Certification

3.     The Court finds that the prerequisites for a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Plaintiffs are typical of the claims of the Settlement Class they seek to represent; (d) Plaintiffs fairly and adequately represent the interests of the Settlement Class; (e) questions of law and fact common to the members of the Settlement Class predominate over any questions affecting only individual members of the Settlement Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of this action. The Settlement Class is being certified for settlement purposes only.

4.     The Court hereby finally certifies this action as a class action for purposes of the Settlement, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of all Persons (including, without limitation, their beneficiaries) who purchased or otherwise acquired Walter Investment Management Corp. ("Walter Investment") Common Stock during the period from May 9, 2012 through February 26, 2015, inclusive, and excluding: (i) Opt-Outs (*i.e.*, those persons who filed valid and timely requests for exclusion from the Settlement Class),; and (ii) Defendants, the present and former officers and directors of Walter Investment, and any subsidiary thereof, during the Settlement Class Period, and the immediate family members, legal representatives, heirs, successors or assigns of such excluded persons and any entity in which any excluded Person has or had a controlling interest (the "Settlement Class Members").

5.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs are certified as the class representatives on behalf of the Settlement Class ("Class Representatives") and Plaintiffs' Counsel previously selected by Lead Plaintiff and appointed by the Court are hereby appointed as Co-Class Counsel for the Settlement Class ("Co-Class Counsel").

6.     In accordance with the Court's Preliminary Approval Order, the Court hereby finds that the forms and methods of notifying the Settlement Class of the Settlement and its terms and conditions met the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Exchange Act, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation, to all persons and entities entitled to such notice.  The Court has considered the objection to notice proffered by Mr. James Michael Shaw, Jr.  The notice used by Plaintiffs provides sufficient notice to appraise class members of the steps they need to take in order to participate in the class settlement. No Settlement Class Member is relieved from the terms and conditions of the Settlement, including the releases provided for in the Settlement Stipulation, based upon the contention or proof that such Settlement Class Member failed to receive actual or adequate notice.  A full opportunity has been offered to the Settlement Class Members to object to the proposed Settlement and to participate in the hearing thereon.  The Court further finds that the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, were fully discharged.  Thus, it is hereby determined that all Settlement Class Members are bound by this Order and Final Judgment except those persons who properly excluded themselves from the Settlement Class.

## II.      Final Settlement Approval

7.      There is a "strong judicial policy favoring settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

8.      To approve a settlement under Federal Rule of Civil Procedure 23(e), a district court must "make a two part determination that: 1) there is no fraud or collusion in reaching the settlement, and 2) the settlement is fair, adequate and reasonable." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

9.      The Court finds no fraud or collusion in reaching the Settlement.  This Settlement was the result of a hard-fought negotiation requiring two separate mediations between the parties.  The Court in particular notes that after the first mediation failed, the parties vigorously litigated class certification, strongly indicating a lack of collusion between the parties.

10.      The Eleventh Circuit has held that in determining whether a proposed settlement is "fair, adequate and reasonable," a court should look to the following *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery, (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.

11.      The first and most important *Bennett* factor is "the likelihood of success at trial." *Bennett,* 737 F.2d at 986. This factor is evaluated in the context of the relief proposed by the settlement. *See Behrens v. Wometco Enterprises, Inc*., 118 F.R.D. 534, 540 (S.D. Fla. 1988), *aff'd sub nom.*, 899 F.2d 21 (11th Cir. 1990) (approving class action settlement because "[i]f the plaintiff pursued this cause through trial, the likelihood of achieving any success would be at risk"). Here, even though the motions to dismiss were defeated and the class certified, Plaintiffs

faced risks in litigating this action to a verdict. If Plaintiffs prevailed on class certification, they would have had to prove every element of their cause of action and negate every affirmative defense in order to recover. Defendants would have argued at trial that the Company's financial statements were accurate, and that Defendants' statements about Green Tree's compliance policies and procedures were literally true and not misleading because Green Tree had a robust compliance program. Proving scienter at trial would have required showing not just negligence but severe recklessness, posing additional substantial risk and uncertainty. *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1330 (S.D. Fla. 2001).  This factor therefore supports approval.

12.     The second and third factors, which are usually combined, require the Court to determine the possible range of recovery and then determine the minimum fair, reasonable, and adequate settlement within that range. *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005). The Court must evaluate the settlement "in light of the attendant risks with litigation." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011) (internal quotations omitted). Courts in this district emphasize that settlement is compromise and requires "an abandoning of highest hopes." *Id*. (internal quotations omitted).  Plaintiffs report that their damages expert concluded that their "best case" damages recovery, based on the disclosures on March 18, 2013, November 6, 2013, February 27, 2014, August 11, 2014, and February 26, 2015, was $440 million. The Settlement represents 5.5% of this best-case scenario, which assumes prevailing on every single loss causation / stock drop allegation at trial, which is highly unlikely. Defendants vigorously disputed Plaintiffs' damages estimates and, under their analysis, assert Class-wide damages to be zero, or at least much less. The Settlement is an excellent recovery, returning more than triple the average settlement in cases of this size. This factor therefore supports approval.

13.     The "complexity, expense and duration of litigation" also supports approval. "A securities case, by its very nature, is a complex animal." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (internal quotations omitted). Further, complex class actions are "notably difficult and notoriously uncertain." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014) (internal quotations omitted). The Court should consider the significant burden this case would have imposed if it went to trial. *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992). In addition, as discussed above, this case had its share of complex issues. In particular, the action involved complex and costly expert testimony. Plaintiffs had retained a financial expert who provided an opinion on market efficiency for purposes of class certification. Defendants had retained a financial expert who testified on the same subjects as Plaintiffs' corresponding expert. Had the case continued, both parties would have required additional analysis and testimony from financial experts for trial on issues of market efficiency, loss causation, and damages. By negotiating low fee agreements and seeking only necessary work, Plaintiffs have kept expenses low. But in Class Counsel's experience, ongoing discovery and trial preparation would have substantially increased costs to the Class. This factor thus supports approval.

14.     The overwhelmingly positive reaction of class members to a proposed settlement is a significant factor, and the absence of objections "is excellent evidence of the settlement's fairness and adequacy." *Ressler*, 822 F. Supp. at 1556. Although there have been objections to Co-Class Counsel's fee request, there has been no objections to the Settlement or Plan of Allocation. Only one Class Member has submitted a request to be excluded from the Settlement. Therefore, this factor supports approval.

15.     Finally, courts consider the stage of the proceedings at which settlement was achieved. The purpose of considering this factor is to ensure that plaintiffs had sufficient information to evaluate the case and to determine the adequacy of the settlement. *Behrens*, 118 F.R.D. at 544. Here, Plaintiffs had a strong understanding of the strengths and weaknesses of their case, and thus have an ample basis for making an informed judgment that the settlement is fair and reasonable. Plaintiffs had defeated Defendants' motion to dismiss and obtained class certification. Plaintiffs took the deposition of Defendants' financial expert and had a full understanding of the challenges they faced in maintaining class certification through trial and in proving loss causation and damages. Plaintiffs also had a solid grasp of the factual merits of the case. Plaintiffs reviewed over 85,000 pages of documents, consulted with experts, took and/or defended four depositions, prepared for the depositions of fact witnesses, and attended two all-day mediation sessions with a well-regarded mediator.  This factor therefore supports approval.

16.     Accordingly, the Settlement is APPROVED as fair, reasonable and adequate, and in the best interests of the Settlement Class.  This Court further finds that the Settlement set forth in the Settlement Stipulation is the result of good faith, arm's-length negotiations between experienced counsel representing the interests of the Class Representatives, Settlement Class Members and Defendants.  The Settling Parties are directed to consummate the Settlement in accordance with the terms and provisions of the Settlement Stipulation.

17.     The Action and all claims contained therein, as well as all of the Released Claims, are DISMISSED with PREJUDICE as against each and all of the Defendants.  The Parties are to bear their own costs, except as otherwise provided in the Settlement Stipulation.

18.     The Releasing Parties, on behalf of themselves, their successors and assigns, and any other Person claiming (now or in the future) through or on behalf of them, regardless of

whether any such Releasing Party ever seeks or obtains by any means, including without limitation by submitting a Proof of Claim and Release Form, any disbursement from the Settlement Fund, shall be deemed to have, and by operation of this Order and Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties.  The Releasing Parties shall be deemed to have, and by operation of this Order and Final Judgment shall have, covenanted not to sue the Released Parties with respect to any and all Released Claims in any forum and in any capacity.  The Releasing Parties shall be and hereby are permanently barred and enjoined from asserting, commencing, prosecuting, instituting, assisting, instigating, or in any way participating in the commencement or prosecution of any action or other proceeding, in any forum, asserting any Released Claim, in any capacity, against any of the Released Parties.  Nothing contained herein shall, however, bar the Releasing Parties from bringing any action or claim to enforce the terms of the Settlement Stipulation or this Order and Final Judgment.

19.     Defendants, on behalf of themselves, their heirs, executors, predecessors, successors and assigns, shall be deemed to have, and by operation of this Order and Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Plaintiffs, Settlement Class Members and Plaintiffs' Counsel from all Claims which arise out of or relate in any way to the institution, prosecution, or settlement of the claims against the Defendants (the "Defendant Released Claims"), and shall be permanently enjoined from prosecuting the Defendant Released Claims against the Plaintiffs, Settlement Class Members and Plaintiffs' Counsel.  Nothing contained herein shall, however, bar the Defendants or any Released Party from bringing any action or claim to enforce the terms of the Settlement Stipulation or this Order and Final Judgment.

20.     To the fullest extent permitted by law, all Persons shall be permanently enjoined, barred and restrained from bringing, commencing, prosecuting or asserting any claims, actions, or causes of action for contribution, indemnity or otherwise against any of the Released Parties seeking as damages or otherwise the recovery of all or any part of any liability, judgment or settlement which they pay or are obligated to pay or agree to pay to the Settlement Class or any Settlement Class Member arising out of, relating to or concerning such Persons' participation in any acts, facts, statements or omissions that were or could have been alleged in the Action, whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, third-party claims or otherwise, in the Court or any other federal, state, or foreign court, or in any arbitration proceeding, administrative agency proceeding, tribunal, or any other proceeding or forum.  Further, nothing in the Settlement Stipulation or this Order and Final Judgment shall apply to bar or otherwise affect any claim for insurance coverage by any Defendant.

21.     The Court hereby finds that the proposed Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members, and Co-Class Counsel and the Claims Administrator are directed to administer the Plan of Allocation in accordance with its terms and the terms of the Settlement Stipulation. The Court notes that Mr. Shaw's proposed plan of allocation, that of a dividend, would not be appropriate because it would allocate funds to non-class members who purchased shares outside the class period while failing to compensate class members who have sold their shares.

22.     The Court finds that all Settling Parties and their counsel have complied with all requirements of Rule 11 of the Federal Rules of Civil Procedure and the Private Securities Litigation Record Act of 1995 as to all proceedings herein.

23.     Neither this Order and Final Judgment, the Settlement Stipulation (nor the Settlement contained therein), nor any of its terms and provisions, nor any of the negotiations, documents or proceedings connected with them:

(a)     is or may be deemed to be, or may be used as an admission, concession, or evidence of, the validity or invalidity of any Released Claims, the truth or falsity of any fact alleged by the Plaintiffs, the sufficiency or deficiency of any defense that has been or could have been asserted in the Action, or of any wrongdoing, liability, negligence or fault of the Defendants, the Released Parties, or any of them;

(b)     is or may be deemed to be or may be used as an admission of, or evidence of, any fault or misrepresentation or omission with respect to any statement or written document attributed to, approved or made by any of the Defendants or Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal;

(c)     is or may be deemed to be or shall be used, offered or received against the Settling Parties, Defendants or the Released Parties, or each or any of them, as an admission, concession or evidence of the validity or invalidity of the Released Claims, the infirmity or strength of any claim raised in the Action, the truth or falsity of any fact alleged by the Plaintiffs or the Settlement Class, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

(d)     is or may be deemed to be or shall be construed as or received in evidence as an admission or concession against Defendants, or the Released Parties, or each or any of them, that any of Plaintiffs' or Settlement Class Members' claims are with or without merit, that a litigation class should or should not be certified, that damages recoverable in

the Action would have been greater or less than the Settlement Fund or that the consideration to be given pursuant to the Stipulation represents an amount equal to, less than or greater than the amount which could have or would have been recovered after trial.

24.     The Released Parties may file the Settlement Stipulation and/or this Order and Final Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

25.     Except as otherwise provided herein or in the Settlement Stipulation, all funds held by the Co-Escrow Agents shall be deemed to be in *custodia legis* and shall remain subject to the jurisdiction of the Court until such time as the funds are distributed or returned pursuant to the Settlement Stipulation and/or further order of the Court.

26.     Exclusive jurisdiction is hereby retained over the Settling Parties and the Settlement Class Members for all matters relating to the Action, including the administration, interpretation, effectuation or enforcement of the Settlement Stipulation and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the Settlement proceeds to the Settlement Class Members.

27.     Without further order of the Court, the Defendants and Class Representatives may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Stipulation.

28. There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

29. The finality of this Order and Final Judgment shall not be affected, in any manner, by any rulings that the Court may make on Co-Class Counsel's application for an award of attorneys' fees and expenses or an award to the Class Representatives.

## III.   Attorneys' Fees

### A.   Objections to the Proposed Fee

30. The Court has received three objections to Co-Lead Counsel's fee request which were filed by i) Baskerville SPV, L.P. and Baker Street Capital, L.P.; ii) Birch Run Capital Partners, LP, Pike BRC, LP, and Walloon BRC, LP (collectively, the "Fund Objectors"); and iii) James Michael Shaw, Jr.

31. Mr. Shaw objects to the fee request on the grounds that it is excessive given the number of hours likely expended by Co-Class Counsel. However, Mr. Shaw's objection is based on the erroneous assumption that Co-Class Counsel was unlikely to have expended even 1,000 hours on this matter. In reality, Co-Class Counsel's work far exceeds that amount, as would be expected in a case of this scope and duration. The Court therefore finds that Mr. Shaw's objection is without merit.

32. The Fund Objectors are two groups of hedge funds whose representatives currently occupy two seats on Walter's board of directors. Plaintiffs have questioned both the motives of these objectors and whether they have standing. Regardless of the Fund Objectors' motives or standing, however, the Court will consider the merits of the Fund Objectors' arguments. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1300 (11th Cir. 1999)

(noting the "importance of the active supervisory role of the district court when reviewing class action settlements, particularly those involving the so-called 'clear sailing' agreements").

33.     Turning to the merits of those objections, the Court finds that the Fund Objectors erred in the methodology that they used to evaluate Co-Class Counsel's fee.  Fund Objectors would have this Court focus almost exclusively on the "lodestar" method in order to determine fees.  Under the lodestar method of calculating attorneys' fees, the court would consider the number of hours worked by counsel and their customary hourly rates, and apply a "multiplier" to those hours in order to compensate attorneys for the risk undertaken and the quality of work done.  However, the Eleventh Circuit has rejected the use of the lodestar method in calculating attorneys' fees from a common fund. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991). Instead, an attorney's fee in such a case should be calculated as a reasonable percentage of the recovery received by the class. *Id.*

34.     While the Court may consider the lodestar as a "cross-check" for the reasonableness of the settlement, there is no basis to conclude that a 3.58 lodestar multiplier is excessive.  Such a multiplier is well within the range previously accepted in this district. *See Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that lodestar multipliers "'in large and complicated class actions' range from 2.26 to 4.5" and that "three appears to be the average"); *Ingram v. The Coca-Cola Co*, 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 in a national class action securities case is not unusual or unreasonable.").  Fund objectors claim that fee awards in this Circuit with a lodestar multiplier in the range of 3.58 are typically

associated with a lower than 33% fee – but Fund Objectors do not explain how it follows that this observation renders a 3.58 lodestar unreasonable when it does result in such a fee.

35.     Nor are Fund Objectors correct that Co-Class Counsel are not permitted to use New York rates in calculating their lodestar. A court is required to apply local rates to hours worked in calculating a lodestar where local attorneys are available and willing to take on the case. *Am. Civil Liberties Union of Georgia v. Barnes*, 168 F. 3d 423, 437 (11th Cir. 1999),  In this case, no such local attorneys came forward to act as lead counsel.  Moreover, Defendants retained both a highly experienced Florida law firm and a New York law firm for their defense. It would be unreasonable to preclude the Class from also selecting the counsel of their choice. Thus, it is appropriate to use the rates of the jurisdiction where Co-Class Counsel are located: New York.

36.     Fund Objectors suggest because two law firms together prosecuted this action, there must have been some duplication of work.  However, "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988). While redundant hours are possible, there is no evidence of such redundancy here, and the 3,823 hours worked by class counsel are reasonable given the complexity of the case and the advanced stage of the case at the time of settlement. Therefore, the Fund Objectors' objections lack merit.

**B.     Co-Class Counsel's Fee Request**

37.     Having considered the various objections to the fee requested, the Court now turns to evaluating Co-Class Counsel's proposed fee in light of the standard set forth by *Camden*

*I.* In *Camden I,* the Eleventh Circuit stated that an attorney's fee in a common fund case should be calculated as a reasonable percentage of the recovery received by the class. 946 F.2d at 773. The Court held that district courts should begin with a 20-30% benchmark, and adjust the percentage up or down based on "the individual circumstances of each case, as opposed to the lodestar hourly fee used in statutory fee awards." *Id.* at 775. The Eleventh Circuit has previously approved the selection of 30% as an appropriate benchmark in a complex securities class action. *Waters*, 190 F.3d at 1294.

38.     30% is an appropriate benchmark here, given the complexity of this matter and the skill that is required. With the appropriate benchmark set, the Court will now "consider whether the benchmark should be adjusted up or down based on the circumstances of the case as analyzed under the twelve factors outlined in *Johnson.*" *Camden I*, 946 F.2d at 773.

39.     The Eleventh Circuit in *Camden I* identified several factors which should be considered in arriving at a reasonable percentage fee: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases." *Id*. at 772 n.3 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)). "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees

requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Id.* at 775.

      **C.**    **The *Camden I* Factors**

          **1.**    **Awards in Similar Cases**

      40.     In recent orders awarding fees in securities class action settlements, courts have awarded attorneys' fees of 30% or 33% of the settlement fund. *In re Groupon Sec. Litig.*, No. 12 CV 2450, 2016 U.S. Dist. LEXIS 95881, at *1 (N.D. Ill. July 13, 2016) (awarding "30% of the Settlement Fund, or $13,500,000"); *Aranaz v. Catalyst Pharmaceutical Partners Inc.*, No. 13–cv–23878–UU, D.E. 153 at ¶ 18 (S.D. Fla. 2015); *Howard v. Chanticleer Holdings, Inc.*, No. 12-cv-81123-JIC, D.E. 74 at ¶ 4 (S.D. Fla. 2014) ($33^{1/3}$% of $850,000 fund).  This factor therefore supports an upward adjustment to the benchmark percentage to the 30-33% range.

          **2.**    **Time and Labor Required**

      41.     Class Counsel has devoted significant time and resources to researching, investigating, and prosecuting of this action. By the time the Settlement was reached, Class Counsel had: (a) investigated the factual circumstances underlying the claims against Defendants; (b) drafted their initial, Amended, Second Amended and operative Third Amended Complaint; (c) defeated certain Defendants' motions to dismiss; (d) engaged in extensive document discovery and reviewed over 85,000 pages of documents; (e) prepared for and took and/or defended the depositions of the class representatives and the experts in the case; (f) successfully obtained class certification despite vigorous opposition from the Defendants; (g) prepared a mediation statement and participated in an all-day mediation with Hon. Layn Phillips in New York; and (h) negotiated the specific terms of the Settlement. Class Counsel expended approximately 3,823 hours.  Based on Class Counsel's hourly rates, the value of this work if

performed on non-contingent hourly basis would be $2,233,022. The significant time and labor

that Class Counsel expended on behalf of the Class with no assurance of ultimately being paid

supports some upward adjustment to the benchmark percentage.

### 3.     The Novelty and Difficulty of the Questions Involved

42.     Class Representatives faced all the "multi-faceted and complex legal questions

endemic" to cases based on alleged violations of federal securities law. *Ressler v. Jacobson*, 149

F.R.D. 651, 654 (M.D. Fla. 1992); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323,

1334 (S.D. Fla. 2001) (same). Moreover, "securities actions have become more difficult from a

plaintiff's perspective in the wake of the PSLRA." *In re Sterling Fin. Corp. Sec. Class Action*,

No. CIV.A. 07-2171, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009). This action was no

exception. The Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S.

Ct. 2398 (2014) ("*Halliburton II*"), which held that Defendants may rebut the presumption of

reliance at the class certification stage, further complicated matters. Indeed, although Plaintiffs

won class certification, the Defendants sought interlocutory review of the class certification

decision, arguing that the Court misapplied *Halliburton II*. Specifically, Defendants claimed that

i) the Court improperly imposed on the Defendants a heightened burden of proof for rebutting

the presumption of reliance, and ii) the Court erred by not considering direct evidence that

Defendants contended negated price impact, simply because the same evidence also related to

materiality and loss causation. Class Counsel would also have had to successfully maintain class

certification through trial, and prove damages, requiring additional complicated expert

testimony. The results of battles of the experts are notoriously difficult to predict. *City of*

*Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *9

(S.D.N.Y. May 9, 2014).  The Court finds that this factor warrants an upward adjustment to the benchmark.

### 4.      The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys

43.      The quality of the representation by Class Counsel and the standing of Class Counsel are important factors that support the reasonableness of the requested fee. *David v. Am. Suzuki Motor Corp*., No. 08-cv-22278, 2010 WL 1628362, at *8 n. 15 (S.D. Fla. Apr. 15, 2010) (a court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one"). Class Counsel has developed a reputation for zealous advocacy in securities class actions. *In re Petrobras Sec. Litig*., 104 F. Supp. 3d 618, 625 (S.D.N.Y. 2015) (appointing Pomerantz as sole lead counsel in multi-billion dollar securities class action and stating that "[t]he Court is familiar with the Pomerantz firm from previous matters, and finds that it is well qualified to serve as lead counsel.") (citations omitted);  *Pace v. Quintanilla,* No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action.").

44.      Class Counsel prosecuted this case zealously and skillfully. As noted above, the case required significant efforts. For example, Class Counsel engaged in two rounds of briefing on Defendants' motions to dismiss the First and Second Amended Complaints. After Plaintiffs' prevailed (in large part) on the motion to dismiss, Class Counsel drafted and filed a Third Amended Complaint in accordance with the Court's instructions.

45.     Similarly, in moving for class certification, Class Counsel expeditiously filed their initial motion, took Defendants' expert's deposition, defended their own expert's deposition, and promptly filed their Reply Brief —notwithstanding the complex issues raised by the recent Supreme Court decision on class certification in securities class actions.

46.     The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work. *See, e.g., Sunbeam,* 176 F. Supp. 2d at 1334; *Ressler*, 149 F.R.D. at 654. Defendants were represented by experienced and highly-skilled lawyers from Simpson Thacher & Bartlett LLP, widely recognized as one of the premier law firms in this country and Holland & Knight LLP, an Am Law 100 which was named a "Florida Powerhouse" by Law360. Defense counsel have reputations for vigorous advocacy in the defense of complex civil cases such as this.

47.     In particular, Class Counsel had to navigate numerous complex issues concerning loss causation, damages, and market efficiency, which necessitated expensive and time-consuming expert testimony at the class certification stage.

48.     As a result of the foregoing, the Court concludes that this factor warrants an upward adjustment from the benchmark.

### 5.     Preclusion of Other Employment

49.     While this litigation doubtless did require Co-Class Counsel to forego other work, this is true of most complex securities litigation.  Therefore, this factor is neutral with respect to an adjustment up or down from the benchmark.

### 6.     The Customary and Contingent Nature of the Fee

50.     The "customary fee" in a class action lawsuit of this nature is a contingency fee because virtually no individual possesses a sufficiently large stake in the litigation to justify

paying his attorneys on an hourly basis. *See Ressler*, 149 F.R.D. at 654; *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

51.     The Court should give substantial weight to the contingent nature of Class Counsel's fees when assessing the fee request. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in determining the award of fees, and that skilled counsel should be encouraged to undertake this risk. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla.2011) ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award.").  This case is fully contingent, meaning that Class Counsel has not received any payments whatsoever and have borne more than $320,000 of incurred expenses and paid attorney salaries (not counted in the expense account) for the duration of the case, with no guarantee that they would be successful at trial. In similar cases, plaintiffs' counsel have suffered major defeats after years of litigation, trial, and appeals in which they expended millions of dollars in time and received no compensation at all. Because Class Counsel received virtually no cash payout until final approval of the settlement in this case, this factor is supportive of an upward adjustment to the benchmark.

### 7.     The Results Obtained

52.     Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Ressler*, 149 F.R.D. at 655 ("It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained."). The settlement amount of $24,000,000 is an outstanding result. Class Counsel

retained a damages expert who analyzed Plaintiffs' "best case" recovery, assuming that Plaintiffs maintained class certification, won at trial, and overcame Defendants' affirmative defenses. The expert made several very optimistic assumptions, including that all of the alleged stock drops are attributed to revelation of Defendants' fraud, and that there were no shareholders who could not avail themselves of the presumption of reliance because they did not rely on the integrity of the market price. With these optimistic assumptions, Class Representatives' expert estimates total maximum damages could be as high as $440 million. However, damages for the stock drops that were sustained on the Amended Complaint are only $240 million. The Settlement thus returns an excellent 5.5% of maximum damages and 10% of the most likely damages scenario. The Settlement compares very favorably against the average recovery in cases of comparable size; in cases with estimated damages of $400-$599 million, the median settlement between 1996 and 2015 returned 1.8% of estimated damages. Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review* 33 (NERA Economic Consulting, 2015). Therefore, this factor warrants an upward adjustment to the benchmark.

### 8.    The "Undesirability" of the Case

53.    The Court notes that Co-Class Counsel was the only counsel willing to take on this litigation. Under such circumstances, this factor supports an upward adjustment to the benchmark.

### 9.    The time limitations imposed by the client or the circumstances

54.    No particular time limits existed in this case, other than normal court scheduling. Therefore, this factor is neutral.

### 10.   The Time Required to Reach a Settlement

55.   This case was filed in 2014.  The Court does not find that the time required to reach a settlement in this matter to be atypical.  The Court therefore considers this factor neutral.

### 11.   Substantial Objections by Class Members

56.   There have been three objections by class members, but as the Court found, these were based on faulty factual and legal premises.   The Court therefore considers this factor neutral.

### 12.   Non-Monetary Benefits to Class Members

57.   This was a damages action seeking compensation for alleged wrongdoing that had already occurred.  No non-monetary relief was sought.  The Court therefore considers this factor neutral in considering whether to depart from the benchmark.

### 13.   The Economics Involved In a Class Action

58.   The Court takes note of the fact that Co-Class Counsel incurred expenses in excess of $320,000.  Had Plaintiffs not prevailed, this expense would have been borne by Co-Class Counsel.  Thus, this litigation presented a significant financial risk to Co-Class Counsel, one that justifies an upward adjustment to the benchmark.

59.   Taken together, the *Camden I* factors justify an upward adjustment to the benchmark.  Co-Class Counsel has requested a fee of 33.3% of the common fund.  Such a fee constitutes a modest departure from the benchmark and is warranted by the above examination of the *Camden I* factors.

### D.   Optional Lodestar Crosscheck

60.   While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of an award of one-third

of the Settlement Amount fee. *Waters*, 190 F.3d at 1298 ("while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison"). Class Counsel provided the Court with documentation and sworn declarations supporting a lodestar of $2,233,022. Specifically, Class Counsel expended 3,823 hours in investigating, litigating, and resolving this case (including a reasonable estimation of upcoming hours). The Court finds the hours expended to be reasonable when compared with the time and effort put forth by Class Counsel in investigating, litigating, and resolving this case, as well as in light of the results for the Settlement Class. Accordingly, the overall lodestar of $2,233,022, when enhanced by a reasonable multiplier of 3.58, provides a reasonable lodestar cross-check in awarding Class Counsel's Fee Award of $8,000,000.

### E.  Co-Class Counsel's Fee Award is Reasonable

61.     Co-Class Counsel are hereby awarded 33.3% of the Settlement Amount in fees, which the Court finds to be fair and reasonable, and $324,443 in reimbursement of expenses. Defendants shall have no responsibility for any allocations of attorneys' fees and expenses, and shall have no liability to Co-Class Counsel or any other person in connection with the allocation of attorneys' fees and expenses.

62.     Class Representatives are each hereby awarded $15,000 each, which the Court finds to be fair and reasonable.

63.     In the event the Settlement is not consummated in accordance with the terms of the Settlement Stipulation, then the Settlement Stipulation and this Order and Final Judgment (including any amendment(s) thereof, and except as expressly provided in the Settlement Stipulation or by order of the Court) shall be null and void, of no further force or effect, and without prejudice to any Settling Party, and may not be introduced as evidence or used in any

action or proceeding by any Person against the Settling Parties or the Released Parties, and each Settling Party shall be restored to his, her or its respective litigation positions as they existed prior to April 11, 2016, pursuant to the terms of the Settlement Stipulation.

Dated: __Oct. 14, 2016_, 2016

_____

HON. URSULA UNGARO
UNITED STATES DISTRICT JUDGE